**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CHRISTINE E. MANNI,

                            Plaintiff,

              v.                                                    No. 15-CV-1140

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                            Defendant.

_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**APPEARANCES:**                              **OF COUNSEL:**

Olinsky Law Group                            HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

Social Security Administration,              JASON P. PECK, ESQ.
Office of General Counsel                     Special Assistant U.S. Attorney
Attorneys for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

### MEMORANDUM-DECISION AND ORDER

        Plaintiff Christine E. Manni ("Plaintiff") brings this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act ("Act").

Plaintiff moves for the matter to be remanded for further proceedings, and the

Commissioner cross-moves for a judgment on the pleadings.  Dkt. Nos. 10, 12.

# I. Background

On August 3, 2012, plaintiff protectively filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq., claiming an alleged onset date of January 1, 2009. T.[1] 156-59. The application was denied on October 18, 2012. Id. at 75-80. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was first held before ALJ Elizabeth W. Koennecke on February 10, 2014. Id. at 58-71. ALJ Koennecke adjourned the hearing to a later date so that plaintiff could retain counsel. Id. The second hearing was held on April 21, 2014, and plaintiff appeared with counsel. Id. at 41-57 (transcript of the hearing). In a decision dated June 13, 2014, the ALJ held that plaintiff was not entitled to disability benefits. Id. at 16-40. Plaintiff filed a timely request for review with the Appeals Council, and on July 24, 2015, the request was denied, thus making the ALJ's findings the final decision of the Commissioner. Id. at 1-6. This action followed.

# II. Discussion

## A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'more than a mere scintilla,'" meaning that in the record one can find "'such relevant

---

[1] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 9.

evidence as a reasonable mind might accept as adequate to support a conclusion.'"
Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971) (internal quotation marks omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with
sufficient specificity to allow a court to determine whether substantial evidence supports the
decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing
Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute
its interpretation of the administrative record for that of the Commissioner if the record
contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d
Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is
conclusive. 42 U.S.C. § 405(g); see Halloran, 362 F.3d at 31.


### B. Determination of Disability

"Every individual who is under a disability. . . shall be entitled to a disability. . . benefit
. . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment . . . which has lasted or can be expected to last for a continuous period of not
less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an
affliction that is so severe that it renders an individual unable to continue with his or her
previous work or any other employment that may be available to him or her based upon
age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be
supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. §
423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical

facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." <u>Ventura v. Barnhart</u>, No. 04 Civ. 9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983)) (additional citation omitted).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity ("RFC") to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry</u>, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the first four steps. <u>DeChirico v. Callahan</u>, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing <u>Berry</u>, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. <u>Id.</u> at 1180 (citing <u>Berry</u>, 675 F.2d at 467).


**C. ALJ Koennecke's Findings**

Plaintiff, represented by counsel, testified at the hearing held on April 21, 2014.  T. 41-51.  Using the five-step sequential evaluation, ALJ Koennecke found that plaintiff (1) had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date; (2) had the following severe medically-determinable impairments: a learning disability, a depressive disorder, and an anxiety disorder; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained "the residual functional capacity to perform a full range of sedentary work at all exertional levels.  Additionally, the claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others in order to carry out simple tasks, and handle work-related stress in that she can make decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others"; and, thus (5) was capable of performing her past relevant work as a cashier and food service clerk.  Id. at 21-33.

### D.  Plaintiff's Contentions

Plaintiff contends that the ALJ (1) erred in finding that her learning disability did not meet Listing 12.05(C); (2) erred in failing to find her degenerative disc disease and lumbar facet syndrome severe; (3) failed to properly consider th effect of her physical impairments on her ability to work; (3) failed to properly consider the evidence of record as to her mental impairments; (4) erred in finding plaintiff's statements regarding her symptoms not fully

credible; and (5) erred in failing to call a vocational expert to determine the effect of her non-exertional impairments on the occupational base of unskilled work. See Dkt. No. 10.

### 1. Listing 12.05(C)

Plaintiff argues that the ALJ erred in finding that plaintiff's learning disability did not meet the requirements of Listing 12.05(C). Dkt. No. 10 at 14-17. Defendant argues that plaintiff did not present evidence of the requisite deficits in adaptive functioning to meet Listing 12.05(C). Dkt. No. 12 at 8-12. Thus, defendant contends that the ALJ's decision finding that plaintiff did not meet Listing 12.05(C) is supported by substantial evidence. Id.

The listing for an intellectual disability is different than the listing for other mental disorders. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(A)(2). Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. Section 12.05(C) provides for a disability where there is "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05(C). Additionally, "claimants also 'must satisfy a *diagnostic description* contained in the introductory paragraph' of that section by making a 'threshold showing that they suffer from significantly subaverage general intellectual functioning with deficits in adaptive functioning' initially manifested prior to age 22.'" Brothers v. Colvin, No. 7:16-cv-00100 (MAD), 2017 WL 530525, at *6 (N.D.N.Y. Feb. 9, 2017) (quoting Casey v. Comm'r of Soc. Sec., No. 13-CV-947, 2015 WL 5512602, at *6 (N.D.N.Y. Sept. 15, 2015) (emphasis in original) (internal quotation marks and additional citations omitted). Here, defendant does not dispute that plaintiff has a valid

IQ score and an additional physical or mental impairment that satisfy the first two requirements of Listing 12.05(C). Dkt. No. 12 at 8. Thus, the Court will limit its analysis to whether substantial evidence supports the ALJ's conclusion that plaintiff did not demonstrate the requisite deficits in adaptive functioning.

Deficits in adaptive functioning are manifested where a claimant exhibits "'an inability to cope with the challenges of ordinary everyday life.'" Barton v. Astrue, No. 3:08–CV–0810 (FJS/VEB), 2009 WL 5067526, at *7 (N.D.N.Y. Dec. 16, 2009) (quoting Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007)). The regulations do not require that a claimant be "completely helpless," rather, courts consider multiple factors, including "living on one's own, independently caring for children, cooking, paying bills, communication abilities, and daily living skills[.]" Stephens v. Colvin, 200 F. Supp. 3d 349, 359-60 (N.D.N.Y. 2016) (citations omitted).

Here, plaintiff notes her participation in special education classes in both secondary school and community college, along with her difficulties in comprehension and math as evidence of deficits in adaptive functioning. Dkt. No. 10 at 15 (citing T. 45-46). Additionally, plaintiff notes a psychologist's report from 1978 noting plaintiff's "long history of learning disabilities" probably based on her "minimal brain dysfunction at birth." Id. (citing T. 410-11). Plaintiff also notes her "ongoing need for supported employment and the various notes regarding her borderline intellectual functioning." Id. In support of these contentions, plaintiff cites to a "Supported Employment Referral Form" completed in September 2009 by Lori Kennedy, plaintiff's vocational rehabilitation counselor. Id. At 15-16. The form noted that plaintiff had difficulties with receptive language, including following multiple directions, and learning new tasks, as well as expressive communication, including explaining

information coherently.  T. 270.  Kennedy described plaintiff's affect as "withdrawn" and "frequently upset or irritated."  Id.  Kennedy also notes that plaintiff was impaired in the areas of self direction, work skills, and work tolerance.  Id. at 271.  However, Kennedy also noted that plaintiff was "bored" and seeking employment, and that plaintiff lives on her own. Id. at 272.

The ALJ noted plaintiff's activities in daily living in finding that she did not meet Listing 12.05(C).  T. 26-27.  In September 2012, consultative examiner Dr. Christina Caldwell, Psy. D. noted that plaintiff was able to dress, bathe, and groom herself.  Id. at 378.  Dr. Caldwell also noted that plaintiff could perform an array of activities of daily living, including cooking food, general cleaning, laundry, shopping, managing money, and using public transportation.  Id.  Plaintiff reported that she does not socialize with friends frequently because of "transportation issues, depression, and anxiety."  Id.  However, plaintiff stated that her anxiety was not as severe as it used to be, and that she was very close with her siblings and their children.  Id. at 378-79.  Additionally, plaintiff reported that her hobbies and interests included watching television, listening to music, reading, swimming, going to the library, and taking care of pets.  Id. at 379.  During a consultative orthopedic examination with Dr. Kalyani Ganesh, M.D., on May 20, 2014, plaintiff reported that she could cook and clean twice per week, do laundry once per week, shop three to four times per week, shower once or twice per week, and dress daily.  T. 716-17.  Plaintiff also reported that she watched television, listened to the radio, and socialized.  Id. at 717.  Dr. Richard Altmansberger opined in October 2012 that plaintiff had only mild restrictions in activities of daily living.  Id. at 394.

Defendant also notes that Dr. Caldwell opined that plaintiff's expressive and receptive languages were adequate and that her thought processes were coherent and goal-directed. Dkt. No. 10 at 21 (citing T. 378). Dr. Caldwell noted that plaintiff's intellectual functioning was average to possibly below average. T. 378. The ALJ also noted that plaintiff worked for years as a cashier and food service clerk at substantial gainful activity (SGA) levels, despite her cognitive impairment. T. 27. Multiple records from plaintiff's job coaching at Unity Employment Services noted that plaintiff needed assistance to deal with her tendency to have a negative attitude. T. 274-76, 278, 283, 285, 287-89, 291-96, 298, 301-05, 307, 309-24. However, the professional she met with at Unity Employment Services also frequently encouraged plaintiff to contact her therapist for "symptom management." T. 275-76, 278, 280, 283, 285, 287-89, 291-96, 298, 301-06, 309-24. On January 28, 2011, plaintiff told her counselor that she wanted to work more hours, and that she thought working more would help improve her attitude. Id. at 287-88. When a counselor inquired if plaintiff was having any issues at work on August 24, 2011, plaintiff reported that she would prefer to work more hours. Id. at 309. Plaintiff rarely reported employment issues at work, and when she did, her counselor noted that she handled the situation well. See id. at 305.

Defendant cites to the Second Circuit's decision in Talavera v. Astrue, 697 F.3d 145 (2d Cir. 2012) as analogous to plaintiff's case. Dkt. No. 12 at 11-12. The Court agrees. In Talavera, the Second Circuit held that the plaintiff had not shown that she suffered from such severe deficits in adaptive functioning to meet Listing 12.05(C). Talavera, 697 F.3d at 153. In that case, the Second Circuit noted that the plaintiff attended ten years of education and a year of business training. Id. Additionally, the plaintiff had no difficulty completing

tasks during her previous years of employment.  Id.  The Second Circuit also noted that

multiple medical professionals opined that the plaintiff did not suffer from cognitive

impairment so severe that it would "materially limit her ability to cope with the challenges of

ordinary life."  Id. at 153-54.  Here, although plaintiff took special education classes in

school, she successfully completed an associate's degree.  T. 43-44.  The record contains a

psychological testing report from September 2005 that "her perceptual-motor organization

and non-verbal reasoning skills [were] clearly markedly impaired," but plaintiff went on to

work successfully at SGA levels in the years after that evaluation.  In September 2012, Dr.

Caldwell opined that plaintiff could follow and understand simple directions and instructions,

perform simple tasks independently, maintain attention and concentration, maintain a

regular schedule, learn new tasks, and perform complex tasks independently.  Id. at 379.

Dr. Caldwell noted that plaintiff had some difficulties caused by cognitive deficits, but the

record, as noted above, reveals that plaintiff successfully performed many activities of daily

living, and was successful at work, even desiring more hours.  See T. 287-88, 309, 378 394,

716-17.  Plaintiff can successfully perform all of the factors articulated by the Court in

Stephens.  See Stephens, 200 F. Supp. 3d at 359-60.  She lives on her own, can cook and

shop for herself, and manages her own money.  T. 378-80.  Although plaintiff is limited in

some areas, such as relating to others, and managing stress, Dr. Caldwell found that

plaintiff still possesses the attention and concentration to learn and perform both simple and

complex tasks.  Id. at 379.  Additionally, plaintiff's case is readily distinguishable from cases

finding that the claimant suffered the requisite deficits in adaptive functioning.  In Brothers,

the claimant dropped out of school in tenth grade, struggled to cook and complete chores,

could not manage his own money, and lived with his mother.  Brothers, 2017 WL 530525, at

*6; see also Geil v. Colvin, No. 14-CV-6463, 2015 WL 9217026, at *9 (N.D.N.Y. Dec. 16, 2015) (finding the claimant's participation in special education classes, and inability to manage his own funds or perform activities of daily living without assistance from others indicative of deficits in adaptive functioning).  It is the ALJ's duty to weight the evidence presented "and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'"  McNally v. Comm'r of Soc. Sec., No. 5:14-CV-00076, 2015 WL 3621437, at *12 (N.D.N.Y. June 9, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008)).  Thus, the Court finds that the ALJ's determination that plaintiff did not meet Listing 12.05(C) is supported by substantial evidence.

### 2.  The ALJ Did Not Err in Finding Plaintiff's Degenerative Disc Disease and Lumbar Facet Syndrome Severe

Plaintiff argues that the ALJ erred in failing to find plaintiff's degenerative disc disease and lumbar facet syndrome severe. Dkt. No. 10 at 17-18.  Defendant argues that the medical and other evidence does not show that plaintiff's physical impairments "significantly limit [her] physical or mental ability to do basic work activities."  Dkt. No. 12 at 12 (citing 20 C.F.R. § 404.1521(a)).  Thus, defendant argues that plaintiff's physical impairments are not severe.

Plaintiff testified that she has difficulty bending, sitting for a long period of time, and standing.  T. 50.  She wakes up during the night in pain, and has difficulty performing her work at an adequate pace during the day due to pain.  Id. at 53, 55-56.  Given the medical evidence of plaintiff's treatment for and diagnoses of her physical impairments, plaintiff

argues that the ALJ's conclusion that plaintiff can perform work at all exertional levels was error.  Dkt. No. 10 at 17-19.

"[T]he severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment." Labarge v. Colvin, No. 7:15-CV-0732 (GTS), 2016 WL 5408160, at *5 (N.D.N.Y. Sept. 28, 2016) (citations omitted). Furthermore, any error at step two is harmless where the ALJ continues with the five-step sequential evaluation and considers all impairments. Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013).  Here, the ALJ considered plaintiff's physical impairments in determining plaintiff's RFC. See T. 27-31.  The ALJ noted that there were no opinions in the record to support plaintiff's allegations of significant physical limitations, and also gave great weight to the orthopedic consultation of Dr. Ganesh. Id. at 28-30.  Thus, any error at step two was harmless, and the undersigned will address plaintiff's objection to the ALJ's RFC assessment in the next section.

### 3.  The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff argues that (1) the ALJ failed to properly consider the effect of her physical impairments on her ability to work; and (2) the ALJ failed to properly consider the evidence of record as to her mental impairments.  Dkt. No. 10 at 19-24.  Defendant argues that the ALJ's RFC determination is supported by substantial evidence.  Dkt. No. 12 at 14-17.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings

must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in step five of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

Plaintiff first argues that the ALJ incorrectly concluded that she could perform work at all exertional levels. Dkt. No. 10 at 19-20. Plaintiff cites to medical evidence of severe hypertrophic degenerative facet disease, mild disc bulge, and a prominent synovial cyst involving the right facet joint causing severe spinal canal stenosis at L4-L5. Id. at 20 (citing T. 516, 538). Plaintiff's argument is misplaced. Although plaintiff cites these diagnoses as evidence that the ALJ should have determined a more restrictive RFC, plaintiff points to no evidence that would support physical functional limitations.

Dr. Noonan referred plaintiff to eight weeks of physical therapy on March 2, 2012. T. 454. Her initial physical therapy report noted that her cervical spine range of motion was significantly limited for extension and right rotation. Id. at 456. She was diagnosed as having "[i]mpaired range of motion, joint mobility and muscle performance associated with spinal disorders and possible connective tissue disorders." Id. Although her pain persisted, plaintiff discontinued physical therapy in order to take vocational retraining classes. Id. at 555. However, plaintiff did return to physical therapy from in June 2012, and continued

-13-

attending sessions with regularity until August 2012, at which time plaintiff reported improvement of her pain symptoms. See id. at 491.

On September 24, 2013, plaintiff received an MRI that showed "mild degenerative changes" in the lumbosacral spine, including mild disc space narrowing. T. 613. An MRI of her sacroiliac joints revealed degenerative changes in the left sacroiliac joint. Id. She received treatment at the New York Spine and Wellness Center. Plaintiff complained of a burning and stabbing pain in her back lasting two years, but that the pain level was not worsening. Id. at 512. Sandra Sekuterski, a physician's assistant, noted that plaintiff exhibited normal range of motion, but tenderness on palpation of the left and right sacroiliac joints. Id. at 514. Sekuterski recommended a nerve block, along with weight management. Id. at 514-15.

Plaintiff underwent treatment for her back pain with Dr. Richard DiStefano, M.D., at Syracuse Orthopedic Associates beginning in October 2013. T. 540. At that time, plaintiff reported that she had suffered pain in her back for two years. Id. An objective examination revealed mild tenderness over the midline posterior cervical spine and lumbar area. Id. at 542. Plaintiff exhibited a mildly limited range of motion in her cervical spine and a moderately reduced range of motion in her lumbar spine. Id. Range of motion was normal in her shoulders and upper extremities, as well as her thoracic spine. Id.

An MRI performed on November 7, 2013 revealed "diffuse degenerative disc and facet disease that are most severe in the mid to lower lumbar spine," "severe hypertrophic degenerative facet disease" at the L4-5 level, "mild disc bulge, and a prominent synovial cyst involving the right facet joint" which all cause "severe spinal canal stenosis." Id. at 519. Plaintiff was again seen by Dr. DiStefano on November 20, 2013. Id. at 534. She again

complained of achy pain in her back, and Dr. DiStefano noted that her MRI results revealed pain and dysfunction in her back. Id. at 536. However, Dr. DiStefano noted that plaintiff exhibited "painless" range of motion in her spine, that her gait was normal and she was able to climb onto the examination table without pain, and that she "appear[ed] to be in no pain." Id. An examination on December 18, 2013 revealed the same results, and Dr. DiStefano noted that plaintiff was undergoing chiropractic care and spinal injections. See id. at 531-32. On January 15, 2014, plaintiff reported to Dr. DiStefano that she obtained no pain relief from either the spinal injections or the chiropractic care. Id. at 526. However, a physical exam was mostly normal, except for mild tenderness over the midline posterior lumbar. Id. at 528. Notably, Dr. DiStefano noted that plaintiff did not experience pain during his objective examination. See id. During plaintiff's visits to Dr. DiStefano after he received her MRI findings, treatment notes consistently indicated that plaintiff suffered from lower back pain, spinal stenosis, and spondylolisthesis. See id. at 536, 532, 528.

Plaintiff argues that the ALJ failed to assess the effect of her degenerative disc disease and lumbar facet syndrome. The Court disagrees. Contrary to the plaintiff's argument that the ALJ disregarded plaintiff's physical impairments, the ALJ gave great weight to the opinion of Dr. Ganesh, an orthopedic consultative examiner. T. 29. The ALJ noted that, despite her attempts, she was unable to obtain opinions regarding plaintiff's physical RFC from her treating physicians. Id. at 24. As such, the ALJ sent plaintiff to Dr. Ganesh for a post-hearing consultative orthopedic examination.[2] Id. Dr. Ganesh concluded

---

[2] Notably, plaintiff does not argue that the ALJ should have sought a medical source statement and RFC assessment from her treating physician as to her physical limitations. Even if plaintiff had made this argument, the Court would find such an argument inapplicable here. Courts in this district have previously found error requiring remand where an ALJ fails to seek the opinion of a treating physician. Jackson v. Colvin, No. 13-CV-5655 AJN SN, 2014 WL 4695080, at *19 (S.D.N.Y. Sept. 3, 2014); Crysler v. Astrue, 563

that plaintiff had "[n]o gross physical limitation [in the areas of] sitting, standing, walking, and the use of upper extremities." Id. at 718. Dr. Ganesh also completed a medical source statement regarding plaintiff's work-related activities and determined that she had no limitations in any areas of work-related activities. Id. at 720-25. Thus, the ALJ determined that plaintiff could perform work at all exertional levels. Id. at 27. Given that plaintiff's back pain improved with physical therapy, and the objective notes from Dr. DiStefano note plaintiff's lack of pain and limitations upon physical examination, the ALJ's determination is supported by substantial evidence.

Plaintiff next argues that the ALJ failed to properly consider the medical opinions of record as to plaintiff's mental impairments. Dkt. No. 10 at 20-24. First, plaintiff argues that the ALJ "mischaracterized" the opinions of Kathleen Tryon, plaintiff's counselor. Id. at 20-21.

Tryon completed a medical source statement on February 19, 2014, and indicated that plaintiff had mild restrictions in her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. T. 601. Tryon opined that plaintiff had moderate restrictions in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. Id. Tryon further opined that plaintiff had no restrictions in her ability to interact appropriately with supervision, co-workers, and the

---

F. Supp. 2d 418, 435 (N.D.N.Y. 2008). However, the ALJ is only required to make a "reasonable effort to obtain this opinion." Jackson, 2014 WL 4695080, at *19. Here, the ALJ notes that her efforts to obtain opinions regarding plaintiff's physical RFC were fruitless. T. 24. Given the ALJ's efforts, and the plaintiff's burden to establish that she is disabled, the undersigned finds that the ALJ fulfilled her duty to develop the record to the best of her abilities. See Chichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (noting that the claimant bears the burden of proving that he or she is disabled).

public, as well as respond to changes in the routine work setting.  Id. at 602.  When asked if any other of plaintiff's capabilities are affected by her impairment, Tryon noted that plaintiff suffers from depression and anxiety, and sometimes has trouble following through on her commitments.  Id.  The ALJ gave significant weight to this opinion because it is supported by Tryon's treating relationship with plaintiff, as well as the overall record, and the opinions of Dr. Caldwell and Dr. Altmansberger, discussed below.

Despite Tryon's opining that plaintiff had only mild and moderate restrictions as to her work-related abilities in February 2014, Tryon opined to much more restrictive limitations less than one month later on March 12, 2014.  T. 598-603.  Tryon noted many of plaintiff's symptoms, including decreased energy, impairment in impulse control, generalized persistent anxiety, and sleep disturbance, among others.  Id. at 633.  Tryon further opined that plaintiff would be "seriously limited but not precluded" in the following areas: remembering work-like procedures; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and dealing with normal work stress.  Id. at 634.  She noted that plaintiff would be "limited but satisfactory" in the following areas: maintaining attention for a two hour segment; sustaining an ordinary routine without special supervision; making simple work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; and interacting appropriately with the general public.  Id. Although Tryon indicated that plaintiff would be off task 20% of the time during a normal

workday, she also opined that plaintiff would never be absent from work due to her impairments or treatment for her impairments. Id. at 635. The ALJ assigned little weight to Tryon's March 2014 medical source statement. Id. at 30.

The ALJ cited the consultative psychiatric evaluation completed by Dr. Caldwell, and the Mental RFC Assessment performed by Dr. Altmansberger and gave significant weight to each of these opinions. T. 30.

Dr. Caldwell examined plaintiff on September 7, 2012 and offered the following medical source statement:

> The claimant is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently. She is limited in her ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress. Difficulties are caused by Axis I diagnosis and cognitive deficits.

T. 379.

Plaintiff's argument that the ALJ did not properly weigh Tryon's opinion, or Dr. Caldwell's opinion is without merit. Plaintiff argues that the ALJ misinterpreted Tryon's failure to indicate that plaintiff was "unable to meet competitive standards" or has "no useful ability to function" as a statement that plaintiff has no functional limitations at all. Dkt. No. 10 at 21. The Court disagrees. A claimant who exhibits mild or moderate limitations may still be found not disabled at step four of the sequential evaluation. See Lovell v. Colvin, 137 F. Supp. 3d 347, 352 (W.D.N.Y. 2015) (finding that the ALJ's determination that the plaintiff retained the RFC to perform light work was supported by substantial evidence even where the plaintiff exhibited mild difficulties in the area of concentration, persistence, and pace, and moderate difficulties in the area of social functioning).

Plaintiff also takes issue with the ALJ's statement that Dr. Caldwell's determination that plaintiff is "limited" in her ability to make appropriate decisions, relate adequately well with others, and appropriately deal with stress is not quantified, and is inconsistent with the evidence of record. Dkt. No. 10 at 22; T. 30. Plaintiff accuses the ALJ of "cherry-picking" from Dr. Caldwell's opinion, and the Court disagrees with this contention as well. Although an "'ALJ cannot arbitrarily substitute his own judgment for competent medical opinion,' he [or she] remains 'free to choose between properly submitted medical opinions' and to rely on those opinions in reaching his [or her] disability determination." Kessler v. Colvin, 48 F. Supp. 3d 578, 597 (S.D.N.Y. 2014) (quoting McBrayer v. Sec. of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)) (additional citation omitted). Here, the ALJ rejected Dr. Caldwell's opinion as to plaintiff's ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress because of substantial evidence to the contrary, including Tryon's February 2014 opinion noting that plaintiff had no restrictions in her ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting. T. 602. Additionally, Dr. Caldwell's mental status examination noted that plaintiff's manner of relating, social skills, and overall presentation were adequate. Id. at 377. Dr. Altmansberger also opined that plaintiff had no significant limitations in social interaction, and moderate limitations only in the area of interacting with the general public. Id. at 399. Plaintiff's records from Unity Employment Services also indicated multiple times where she handled situations at work appropriately, and she was commended for doing so. Id. at 305. The records from Unity Employment Services also indicated that plaintiff was satisfactorily handling her work obligations and symptom management. Id. at 307. Thus, the Court finds that the ALJ adequately weighed

the medical opinion evidence, and that the evidence supports the ALJ's RFC assessment, particularly where the ALJ specifies that plaintiff retains the ability to perform simple tasks, and handle work-related decision-making in regard to simple tasks, in a position with consistent job duties not requiring plaintiff to supervise or manage the work of others. See T. 27.

Lastly, plaintiff argues that the ALJ erred in giving no weight to the opinion of Lori Kennedy, a vocational rehabilitation counselor, and that the ALJ further erred in failing to consider plaintiff's vocational records. Dkt. No. 10 at 23-24. First, the Court notes that while Kennedy is not an "acceptable medical source" under the regulations, her opinion must still be evaluated, although it is not entitled to the same weight as a physician's opinion. Colon v. Astrue, No. 11-CV-210A, 2013 WL 2245457, at *10 (W.D.N.Y. May 21, 2013). Here, the ALJ properly considered Kennedy's opinion, along with plaintiff's vocational records. T. 31. The ALJ noted that Kennedy's opinion is inconsistent with the medical evidence, and with the opinions of Tryon, Dr. Caldwell, and Dr. Altsmansberger. Id. Indeed, Kennedy's opinions are not supported by clinical findings or medical evidence. The Court also finds no merit in plaintiff's argument that the ALJ failed to consider Social Security Ruling 11-2p. See SSR 11-2p, Titles II and XVI: Documenting and Evaluating Disability in Young Adults, 2011 WL 4055665, at *7 (S.S.A. Sept. 12, 2011) (noting that a young adult's success or lack thereof in job placements should be considered in assessing the young adult's functioning). As stated above, the ALJ considered plaintiff's vocational records in her decision, and the vocational records indicated that plaintiff had success in working at different jobs, and even sought more hours to work. See T. 287-88, 309. The ALJ also noted that plaintiff received assistance from a job coach primarily for her negative

attitude. T. 27. Although plaintiff disagrees with this statement, records note that plaintiff

was encouraged to meet with her therapist to discuss "symptom management." See T.

275-76, 278, 280, 283, 285, 287-89, 291-96, 298, 301-06, 309-24. Thus, it is clear from the

vocational records that plaintiff's alleged limitations in mental functioning are more properly

opined to by medical professionals, not a vocational rehabilitation counselor, as the ALJ

noted.

Accordingly, the undersigned finds that the ALJ did not err in considering the medical

opinion evidence of record.

### 4. The ALJ Did Not Err in Assessing Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing plaintiff's credibility. Dkt. No. 10 at

24-25. Defendant argues that substantial evidence supports the ALJ's credibility finding.

Dkt. No. 12 at 17-18.

"It is the function of the [Commissioner], not [the Court], to resolve evidentiary

conflicts and to appraise the credibility of witnesses, including the claimant. Carroll v. Sec'y

of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citing Richardson v.

Perales, 402 U.S. 389, 398 (1971)) (additional citations omitted). The ALJ's assessment

regarding the claimant's subjective complaints of pain is a two-step inquiry. Genier v.

Astrue, 606 F.3d 46, 49 (2d Cir. 2010). First, the ALJ must determine "whether the claimant

suffers from a medically determinable impairment that could reasonably be expected to

produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines

that the claimant does not suffer from such a medically determinable impairment, "the ALJ

must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted

as consistent with the objective medical evidence and other evidence' of record." Id. (quoting 20 C.F.R. § 404.1529(b)). However, an ALJ cannot reject a claimant's statements about the limiting effect of symptoms "solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. § 404.1529(c)(2). The evidence to be considered by the ALJ includes "information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] treating or nontreating source, and observations by [Social Security Administration] employees and other persons." 20 C.F.R. § 404.1529(c)(3).

If a medically-determinable impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. DDR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate. . .pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and,
>
> (vii) Other factors concerning [the claimant's functional

limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

In determining what amount of credibility, if any, to afford a claimant's testimony regarding pain, the ALJ must consider all of the objective medical and additional evidence with the claimant's subjective complaints to determine whether there are any inconsistencies or conflicts.  20 C.F.R. § 404.1529(c)(4).  If a claimant's subjective complaints of pain are consistent with the objective medical evidence, the ALJ will include the claimant's complaints in his or her assessment of the claimant's RFC.  Id.  "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons, 'with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV. 9435(JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

Plaintiff specifically takes issue with the ALJ's statement that plaintiff's work activity after the alleged onset date, including her desire to work more hours, undermines her claim of disability.  Dkt. No. 10 at 24; T. 31.  Although plaintiff notes that Dr. Elizabeth Maloney opined that plaintiff had difficulty staying focused on the tasks assigned to her, there was substantial evidence in the record for the ALJ to find that plaintiff's symptoms were not as severe as she stated.  See T. 632.  Dr. Caldwell assessed that plaintiff would be able to follow and understand simple directions, and perform simple tasks while maintaining proper attention and concentration.  Id. at 379.  Dr. Altmansberger considered plaintiff's depression and anxiety, and determined that she retained the capacity to understand simple directions

and perform simple tasks.  Id. at 400.  Further, Tryon, who had a longstanding treating relationship with plaintiff, determined that plaintiff was only mildly limited in understanding and carrying out simple instructions.  Id. at 601.  Thus, the ALJ's determination that plaintiff could understand directions for and carry out simple tasks is supported by substantial evidence.

Lastly, plaintiff alleges that the ALJ failed to account for her statements that she had difficulty working quickly and leaving work on time because of her back, shoulder, and neck pain.  T. 55-56.  Plaintiff's statements as to the intensity and frequency of her pain are belied by the record.  Plaintiff successfully completed physical therapy for her back pain in August 2012, and noted in a questionnaire that her pain "comes and goes and is very mild." Id. at 491.  She also noted on the questionnaire that she could lift heavy weights with no pain.  Id.  Although she stated on the questionnaire that she could not sit for more than one hour, and that she had some pain upon walking, the medical evidence of record does not support these limitations.  See id.  Dr. Ganesh noted that plaintiff had no physical limitations.  Id. at 718.  Dr. DiStefano, who treated plaintiff for back pain, noted on multiple occasions that plaintiff had none, or very mild limitations in her ability to move, and that she exhibited no pain during objective examinations.  See T. 528, 536.

Accordingly, the Court finds that the ALJ did not err in assessing plaintiff's credibility.


### 5.  The ALJ Did Not Err at Step Four or Five of the Sequential Analysis

"A disability claimant bears the burden of proving that she cannot return to her past relevant work, either as it is performed in the national economy, or as she actually performed it."  Peryea v. Comm'r of Soc. Sec., No. 5:13-CV-0173 GTS/TWD, 2014 WL

4105296, at *10 (N.D.N.Y. Aug. 20, 2014) (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)) (additional citation omitted). Here, the ALJ determined that plaintiff failed to meet her burden, and found that plaintiff could perform her past relevant work as a cashier and food service clerk. T. 31. Plaintiff argues that the ALJ erred in finding that she could perform her past relevant work. Dkt. No. 10 at 25.

A vocational expert is only needed where a plaintiff meets their burden at step four and shows that he or she cannot perform his or her past relevant work. Wells v. Colvin, 87 F. Supp. 3d 421, 436-37 (W.D.N.Y. 2015). Here, plaintiff did not meet her burden at step four, and "[a]bsent a legal error in calculating the RFC, and this Court has found none, the ALJ's conclusion that [p]laintiff could perform her past relevant work is also supported by substantial evidence." Id. Thus, plaintiff's contentions that the ALJ erred at step four and step five of the sequential analysis are without merit.

### III. Conclusion

Having reviewed the administrative transcript and the ALJ's findings, for the reasons stated herein, the undersigned concludes that the Commissioner's determination is supported by substantial evidence. Accordingly it is hereby:

**ORDERED** that plaintiff Christine E. Manni's motion to remand this case for further hearing (Dkt. No. 1) is **DENIED** and the Commissioner's decision finding no disability is **AFFIRMED**; and it is further

**ORDERED** that defendant's cross-motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties in accordance with Local Rules.

Dated:     March 20, 2017
           Albany, New York

*Christian F. Hummel*

Christian F. Hummel
U.S. Magistrate Judge